964 So.2d 1188 (2007)
Ronnie MITCHENER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-CA-01630-COA.
Court of Appeals of Mississippi.
September 4, 2007.
*1189 Stephen L. Beach III, Jackson, attorney for appellant.
Office of the Attorney General by Deshun Terrell Martin, attorney for Appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. Ronnie Mitchener pled guilty in the Circuit Court of Lowndes County to one count of kidnaping. The court accepted the plea and, at a separate hearing, sentenced Mitchener to twenty years in the custody of the Mississippi Department of *1190 Corrections. Mitchener timely filed a motion for post-conviction relief (PCR). He alleged that he received ineffective assistance of counsel (1) because his attorney repeatedly assured him that if he entered an open plea of guilt he would receive a sentence of time served and probation, and (2) because his attorney told him that the kidnaping victim would not testify against him at the plea hearing, but the victim testified at the sentencing hearing. Mitchener attached the affidavits of witnesses that supported his factual allegations.
¶ 2. The circuit court summarily dismissed the PCR after finding that Mitchener's claims were rendered a sham by his sworn statements in the plea petition and at the plea hearing. Mitchener appeals. We reverse and remand for an evidentiary hearing on the issues of ineffective assistance of counsel and involuntary plea, but find Mitchener's other issues to be without merit.

FACTS
¶ 3. Mitchener was indicted for kidnaping on May 7, 2004, and entered an open plea of guilt at a hearing on November 12, 2004. The prosecutor indicated the State was prepared to show that, on January 3, 2004, Mitchener had held a visitor to his property at gunpoint for several hours. Mitchener did this because he was worried that the victim and other persons were involved in a conspiracy against him. The court informed Mitchener of the constitutional rights he waived by pleading guilty and of the maximum and minimum sentences for the crime. Upon questioning by the court, Mitchener stated that his lawyer had explained the kidnaping charge, his constitutional rights, and any defenses he might have and that he was satisfied with his lawyer's assistance. Mitchener also stated that he was not under the influence of drugs or alcohol and that he was not pleading guilty in response to any threats or promises. Mitchener admitted that he had held the victim at gunpoint. The court accepted Mitchener's plea after finding there was a factual basis for the plea and it was freely, voluntarily, knowingly, and intelligently entered.
¶ 4. At a separate sentencing hearing, the court heard testimony in aggravation from the victim and in mitigation from Mitchener and his examining physician. The aggravating and mitigating testimony was not transcribed and made a part of the record. After hearing the testimony, the court imposed a sentence of twenty years. The court provided a lengthy explanation for the sentence on the record and expressed concerns for Mitchener's mental health and the safety of people in the community. The court related Mitchener's testimony that he still thought the victim and others were involved in a conspiracy against him. The court stated that it based the twenty-year sentence primarily upon Mitchener's demeanor and testimony at the sentencing hearing which revealed that he might remain a danger to the victim and others.
¶ 5. On August 31, 2006, Mitchener filed his PCR alleging his counsel was ineffective for guaranteeing that if Mitchener pled guilty, he would receive time served and probation and the victim would not be able to testify against him. Mitchener also asserted that his guilty plea was involuntary due to these misconceptions created by counsel's erroneous advice. Mitchener attached his own affidavit to his PCR as well as the affidavits of several witnesses. In his affidavit, Mitchener made the following allegations:
1. In early to mid-September 2004, between the hours of 8:00 a.m. and 9:00 a.m., my attorney . . . came to see me at the Lowndes County Jail. He told me he *1191 was going to get me out of jail and get me probation.
2. In or around early October 2004, between 8:00 a.m. and 9:00 a.m., my attorney . . . came to see me at the Lowndes County Jail. He assured me he was going to get me a sentence of time served and probation.
3. In mid to late October 2004, I spoke with my attorney . . . by way of a three way telephone conversation. The telephone call was made by Carolyn Bently to [my attorney], from Janice Burris' telephone, my former bookkeeper and accountant for many years. [My attorney] told me if I pleaded he would have me out of there on time served and some probation. He also told me "Ronnie you did not kidnap this guy." I said, "I know I did not, but if I plead to get myself out of jail will he be able to testify?" [My attorney] told me he will not be able to testify if you plead.
4. Sometime in the fall of 2004, I spoke with my attorney . . . by way of a three way telephone conversation. The telephone call was made by Elizabeth Stephens to [my attorney], for me, my attorney told me several times that he was going to get me probation with time served.
5. On November 12, 2004 at approximately 9:00 a.m. at the Lowndes County Courthouse, my attorney . . . told me that he wanted me to plead. He said, "I've got you covered, I am going to get you time served and a couple years probation." I asked [my attorney] if the alleged victim . . . was going to be able to testify if I plead guilty because if [the victim] testifies, I want to go to trial and tell the truth about what happened.
[My attorney] reassured me again by telling me "He wont [sic] even be able to testify if you plead guilty, plus the Judge doesn't care what this guy thinks, he is just a cabinet maker. I have known this Judge and worked with him a long time, I have you covered." I will have you out of here sometime next week and you will be able to get back to taking care of business.
6. On March 3, 2005, immediately before my sentencing hearing, I learned that [the victim] was in the courthouse preparing to testify against me. I said to my attorney: "You told me that [the victim] would not be able to testify." [My attorney's] reply was: "Well, I did not think he would be able to." If it had not been for [my attorney's] assurances that [the victim] could not testify, I would have never pleaded guilty, as I had told [my attorney] on prior occasions.
7. Every time my attorney . . . told me that I would be sentenced to time served and probation, it was in the form of an absolute guaranty and a certainty that probation would be my sentence. My attorney never told me that he believed or thought probation would be my sentence. All of his assurances to me were in the form of absolute statements that probation would be my sentence.
8. If it had not been for the repeated unqualified assurances of [my attorney] that I would be sentenced to probation, I would not have pleaded guilty and would have insisted on a trial to prove my innocence.
¶ 6. Mitchener's ex-wife, Christine Mitchener, stated in her affidavit that she helped Mitchener stay in contact with his attorney because he had been denied bond. As the trial date neared, she and Mitchener spoke daily about the possibility of a trial and the ongoing plea bargain negotiations. In late September 2004, during a three-way call from Christine to Mitchener and his attorney, the attorney represented that if Mitchener entered an open plea of *1192 guilt, he would get probation. Christine Mitchener said she was hesitant, but the attorney assured her that probation would be the sentence if Mitchener entered an open plea. Before the sentencing hearing, Mitchener's attorney called her and asked if Mitchener could live with her as a condition of his probation. During another conversation between Mitchener and his attorney, she heard the attorney again assure Mitchener he would get time served and probation. Christine Mitchener averred that Mitchener was so sure he would receive this sentence that he asked her to bring his truck to the sentencing hearing so that he could drive himself home. Christine Mitchener opined that if the attorney had not told Mitchener he would get probation, Mitchener would not have pled guilty.
¶ 7. Mitchener's cousin, Betsy Chandler, averred that she learned Mitchener was going to plead guilty several days before the plea hearing and called his attorney for verification. The attorney told Chandler that he had not negotiated a plea deal with the district attorney, but assured her that Mitchener would get probation if he pled guilty. When Chandler expressed disbelief, the attorney "emphatically told me he was sure that Ronnie Mitchener would get probation." Chandler told the attorney she thought it was dangerous for Mitchener to plead guilty without a plea deal, but the attorney said he knew what he was doing. He again reassured Chandler that Mitchener would get probation.
¶ 8. In another affidavit, Elizabeth Stephens swore that, during an October 2004 three-way call from her home, she heard Mitchener's attorney tell him that he would get him time served and probation. In her affidavit, Carolyn Bentley stated that, in fall 2004, she placed several three-way calls for Ronnie Mitchener. At least twice, she heard Mitchener's attorney tell him he was sure that if Mitchener pled guilty, he would get time served and probation. Bentley also heard Mitchener ask the attorney if the victim could testify. The attorney told Mitchener that the victim could not testify if Mitchener pled guilty. Mitchener told the attorney that he wanted to go to trial if the victim could testify, but the attorney told Mitchener that he would have a better chance with a judge than with a jury.
¶ 9. After reviewing the record of the proceedings, the trial court summarily dismissed Mitchener's PCR. The court found that Mitchener's allegations were overwhelmingly belied by the plea hearing transcript and the guilty plea petition, which showed that Mitchener was informed that the court could sentence him to the maximum penalty of thirty years and that the court was the authority for setting the sentence. The court further found that the victim did not testify as to the facts of the case and thus did not testify against Mitchener per se.

STANDARD OF REVIEW
¶ 10. The lower court may summarily dismiss a PCR if "it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief." Miss.Code Ann. § 99-39-11(2) (Rev.2000). On appellate review of a summary dismissal, we take the well-pleaded allegations of the PCR as true and review the record de novo. Myers v. State, 583 So.2d 174, 176 (Miss.1991). We will affirm if the petitioner has failed to demonstrate "`a claim procedurally alive substantial[ly] showing denial of a state or federal right. . . .'" Young v. State, 731 So.2d 1120, 1122(¶ 9) (Miss.1999) (quoting Myers, 583 So.2d at 176). We will reverse and remand for a hearing if the movant has "alleged facts which require further inquiry *1193 in the expanded setting of an evidentiary hearing." Jones v. State, 949 So.2d 872, 873(¶ 3) (Miss.Ct.App.2007) (quoting Myers, 583 So.2d at 175).

LAW AND ANALYSIS
¶ 11. We have consolidated Mitchener's issues under the following heading:
I. DID THE TRIAL COURT ERR BY DISMISSING MITCHENER'S PCR WITHOUT AN EVIDENTIARY HEARING?
¶ 12. Mitchener claims that he made a substantial showing of ineffective assistance of counsel and involuntary plea such that he was entitled to an evidentiary hearing. Claims of ineffective assistance of counsel must be made with specificity and detail. Robertson v. State, 669 So.2d 11, 13 (Miss.1996). Mississippi applies the two-part test from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to ineffective assistance of counsel claims. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985). Under Strickland, a defendant alleging ineffective assistance of counsel bears the burden of proof to show that (1) counsel's performance was deficient and prejudiced the defendant, and (2) there is a reasonable probability that, but for counsel's deficient performance, a different result would have occurred. Mohr v. State, 584 So.2d 426, 430 (Miss.1991). There is a strong but rebuttable presumption that counsel rendered effective assistance. McQuarter v. State, 574 So.2d 685, 686 (Miss.1990). We assess the questions of deficient performance and prejudicial effect by looking at the totality of the circumstances. Hiter v. State, 660 So.2d 961, 965 (Miss.1995).
¶ 13. When a defendant challenges a guilty plea on the ground of ineffective assistance of counsel, he must show unprofessional errors of substantial gravity that proximately resulted in his guilty plea and that, but for these errors, he would not have entered the plea. Reynolds v. State, 521 So.2d 914, 918 (Miss. 1988). Another consideration here is that a claim that counsel's erroneous advice induced a guilty plea implicates the voluntariness of the plea. See Jones, 949 So.2d at 873(¶ 8). "To be enforceable, a guilty plea must emanate from the accused's informed consent." Myers, 583 So.2d at 177.
It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it involves him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty.
Gilliard v. State, 462 So.2d 710, 712 (Miss. 1985) (citing Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)).
¶ 14. The record of the proceedings in this case reveals a facially correct guilty plea. At the plea hearing, the trial court asked Mitchener if he understood that the maximum sentence for the crime was thirty years if imposed by the court but a jury could impose a life sentence. Mitchener responded in the affirmative. The court asked if anyone had given Mitchener any hope of leniency to prompt him to plead guilty. Mitchener responded, "no." Mitchener also stated that he was satisfied with his attorney's advice and help. Mitchener executed a sworn plea petition on the day of the hearing, stating that he entered the plea freely and voluntarily. There was a pre-printed statement in the petition that Mitchener recognized that, if his lawyer told him he might receive probation or a light sentence, that was merely the lawyer's prediction and not binding on the court. Another pre-printed statement declared that no officer or agent of any *1194 branch of government had represented to him that he would receive any form of leniency if he pled guilty. Under a section for district attorney sentencing recommendations, the words "ask for time" appeared with a scratch-through and, next to it, the words, "open plea."
¶ 15. The State argues that Mitchener's allegations that he pled guilty in response to counsel's erroneous advice were belied by the plea petition and the transcript of the plea hearing. It is the rule that "where an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary to the extent that the court can conclude that the affidavit is a sham no hearing is required." Wright v. State, 577 So.2d 387, 390 (Miss. 1991). "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). This presumption has been held to apply to statements in sworn guilty plea petitions. Ward v. State, 879 So.2d 452, 455(¶ 11) (Miss.Ct.App.2003). However, an attack on a facially correct plea may survive summary dismissal if supporting affidavits of other persons are attached. Jones, 949 So.2d at 873(¶ 3).
¶ 16. In Myers, the court discussed the viability of a PCR alleging that the defendant pled guilty in response to the erroneous advice of counsel about the sentence the court would impose. Myers, 583 So.2d at 177. The court stated that a guilty plea may be subject to collateral attack when the defense counsel lied to the defendant about the sentence he would receive. Id. If the defendant relies on the erroneous advice in entering the plea, then the plea is not knowingly and voluntarily made. Id. The court recognized a distinction between a defendant's "mere expectation or hope, however reasonable, of a lesser sentence than might be meted out after conviction upon trial by jury" and counsel's firm representation of a lesser sentence. Id. (citing Sanders v. State, 440 So.2d 278, 287 (Miss.1983) (overruled on other grounds)). While a "mere expectation" or "generalized prediction" of a lesser sentence will not entitle the petitioner to relief, a firm representation of a lesser sentence may vitiate the plea. Id. This Court applied this analysis in Riggs v. State, 912 So.2d 162, 164-65(¶ 7) (Miss.Ct.App.2005), in which we affirmed the dismissal of Riggs's PCR because the evidence showed that Riggs harbored a mere expectation or hope of being sentenced to time served and that counsel had made no firm representation.
¶ 17. In Mitchener's affidavit, Mitchener averred that on numerous instances his attorney guaranteed that, if he pled guilty, he would receive time served and probation. The attorney went so far as to tell Mitchener that he knew the judge and "[had Mitchener] covered." With these statements, the attorney firmly represented to Mitchener what sentence the judge would impose if he pled guilty and did not merely predict what Mitchener could hope for generally. Mitchener's allegations were very specific and detailed as to the time, place, and content of the attorney's assurances. Mitchener attached four witness affidavits providing additional specific and detailed information strongly corroborating Mitchener's claim that the lawyer assured him he would get time served and probation if he pled guilty. The information contained in the affidavits was of sufficient evidentiary strength that we cannot say Mitchener's claims were overwhelmingly belied by the plea petition and plea hearing transcript.
¶ 18. Mitchener's claim that defense counsel misrepresented the length of *1195 sentence that would be imposed for a guilty plea is grounds for showing deficient performance under Strickland. Readus v. State, 837 So.2d 209, 214(¶ 18) (Miss.Ct. App.2003). And, Mitchener's averment that he relied on the attorney's misrepresentations and would not have pled guilty but for the assurance of receiving time served and probation states a claim under the prejudice prong of the Strickland test. Id. Therefore, we reverse and remand this case for an evidentiary hearing on the issues of ineffective assistance of counsel and involuntary plea. We express no opinion on the merits of Mitchener's PCR and hold only that his allegations in the PCR, along with the affidavits of himself and four others, are sufficient to "require further inquiry in the expanded setting of an evidentiary hearing." Myers, 583 So.2d at 175.
¶ 19. We turn to Mitchener's claim that he received ineffective assistance of counsel because his attorney told him the victim could not testify against him if he pled guilty, but the victim did testify at the sentencing hearing. In his affidavit, Mitchener said he told his attorney that, if the victim could testify at the plea hearing, he wanted to go to trial to tell the truth about what happened. The attorney told Mitchener the victim could not testify if he pled guilty. In addition to Mitchener's own affidavit, this claim is supported by the affidavit of Bentley saying she heard the attorney tell Mitchener that the victim could not testify against him if he pled guilty. She also said she heard Mitchener tell his attorney that he wanted to go to trial if the victim could testify. Mitchener avers he would not have pled guilty if the attorney had told him the victim could testify against him.
¶ 20. The trial court reasoned that the attorney's advice and Mitchener's response related to whether the victim would testify for the State against Mitchener on the question of his guilt or innocence and, therefore, this advice did not encompass whether the victim could offer aggravating testimony at the sentencing hearing. Considering the totality of the circumstances, we find Mitchener's claim does not overcome the presumption that counsel rendered effective assistance. Counsel made the statements when Mitchener was engaged in the process of deciding whether to plead guilty or go to trial to have his guilt or innocence determined by a jury. Counsel's statements that the victim could not testify if Mitchener pled guilty logically related to whether, if Mitchener pled guilty, the victim nonetheless would be able to testify against him on the question of his guilt or innocence. In fact, the victim did not testify against Mitchener on the question of guilt or innocence. Mitchener has failed to show counsel's advice was deficient. This issue is without merit.
¶ 21. Finally, for the first time on appeal, Mitchener argues that his attorney was deficient for neglecting to assure that a transcript was made of the aggravating and mitigating testimony at the sentencing hearing. Mitchener does not allege any specific error occurred that would have been shown by the missing transcript. Therefore, he has failed to show prejudice from the failure to transcribe the aggravating and mitigating testimony and his ineffective assistance of counsel claim on this ground is without merit. Brawner v. State, 947 So.2d 254, (¶ 19) (Miss.2006) (citing Green v. Johnson, 160 F.3d 1029, 1039 (5th Cir.1998)).
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS REVERSED AND REMANDED FOR AN EVIDENTIARY HEARING ON THE ISSUES OF INVOLUNTARY PLEA AND INEFFECTIVE ASSISTANCE OF COUNSEL. *1196 ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.