*909
 
 ISHEE, J„
 

 for the Court:
 

 ¶ 1. In 2008, Marcus Vaughn pleaded guilty in the Tunica County Circuit Court to one count of manslaughter and one count of possession of a firearm by a convicted felon. For the manslaughter conviction, the circuit court sentenced him as a habitual offender to twenty years in the custody of the Mississippi Department of Corrections (MDOC). The circuit court also sentenced him to ten years in the custody of the MDOC for possession of a firearm by a convicted felon, with the sentence to run consecutively to his twenty-year sentence for manslaughter. In 2009, Vaughn filed a motion for post-conviction relief (PCR) in the circuit court, which was denied. Aggrieved, he appeals claiming (1) the circuit court erred in failing to grant an evidentiary hearing on his PCR motion; (2) his guilty pleas were not entered voluntarily and intelligently; and (3) he received constitutionally ineffective assistance of counsel. Finding no error, we affirm.
 

 STATEMENT OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. In February 2008, Vaughn was indicted by a grand jury in the circuit court as a habitual offender for the murder of Troyze Woodard and as a non-habitual offender for possession of a firearm by a convicted felon. Vaughn had been convicted of four prior felonies, including two convictions for possession of illegal narcotics and two convictions for automobile burglary. During plea negotiations, the State offered Vaughn a reduction on his murder charge to reflect a charge for manslaughter instead. Vaughn claims his attorney advised him that under a manslaughter charge, the maximum sentence would be twenty years in the custody of the MDOC, but that he would be eligible for early release after serving eighty-five percent of his ultimate sentence. Vaughn also asserts his attorney told him he would be mandatorily sentenced to the ten-year maximum sentence for possession of a firearm by a felon.
 

 ¶ 3. Vaughn pleaded guilty in the circuit court to manslaughter as a habitual offender and possession of a firearm by a felon. Because he was a habitual offender, he received a mandatory twenty-year sentence in the custody of the MDOC without the possibility of parole, probation, or any early release for the manslaughter charge. He received ten years in the custody of the MDOC for possession of a firearm by a felon, to be served consecutively to his twenty-year sentence.
 

 ¶ 4. In 2009, Vaughn filed a PCR motion in the circuit court claiming, among other things, his attorney improperly advised him as to the possibilities of his sentence. The PCR motion was denied. Aggrieved Vaughn appeals, asserting the circuit court erred by failing to conduct an evidentiary hearing on his PCR motion; his guilty pleas were not voluntarily and intelligently entered; and he was denied effective assistance of counsel. Finding no error, we affirm.
 

 DISCUSSION
 

 I. Evidentiary Hearing
 

 ¶ 5. We will not overturn a circuit court’s denial of a PCR motion unless its factual findings are clearly erroneous.
 
 Russell v. State,
 
 44 So.3d 431, 434 (¶ 5) (Miss.Ct.App.2010) (citation omitted). When analyzing a PCR motion, the circuit court must “review the ‘original motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack’ to determine whether the defendant has proven the merit of the allegations by a preponderance of the evidence.”
 
 Id.
 
 at 434 (¶ 6)
 
 *910
 
 (quoting
 
 Cross v. State,
 
 964 So.2d 535, 537 (¶ 8) (Miss.Ct.App.2007)). “An evidentiary-hearing is not necessary where the allegations in a petition for post-conviction relief are specific and conclusory. An evidentia-ry hearing in [such a] case will not reveal anything which has not been adequately presented in [the] petition.”
 
 Cole v. State,
 
 666 So.2d 767, 777 (Miss.1995) (citation omitted). “The trial court is not required to grant an evidentiary hearing on every petition it entertains.”
 
 Byrne v. State,
 
 30 So.3d 1264, 1266 (¶ 7) (Miss.Ct.App.2010) (quotation omitted).
 

 ¶ 6. Here, the circuit court’s order denying Vaughn’s PCR motion reflects that the circuit court analyzed Vaughn’s motion and all pertinent documents before ruling against his claim. In the ten-page order, the circuit court cited passages from Vaughn's plea-hearing transcript and specific quotes from his PCR motion. It is evident from the circuit court’s detailed analysis that the court properly reviewed Vaughn’s case before denying his PCR motion.
 

 ¶ 7. Furthermore, the circuit court determined that Vaughn clearly failed to establish a prima facie case for his allegations. In so concluding, the circuit court again used Vaughn’s direct quotes from his plea hearing and PCR motion in determining that he could not support his claims. Likewise, our review of the record negates a showing that an evidentiary hearing was required. This issue is without merit.
 

 II. Guilty Pleas
 

 ¶ 8. When reviewing the volun-tariness of guilty pleas, an appellate court “will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous.”
 
 Walton v. State,
 
 16 So.3d 66, 70 (¶ 8) (Miss.Ct.App.2009) (quoting
 
 House v. State,
 
 754 So.2d 1147, 1152 (¶ 24) (Miss.1999)). Additionally, “[t]he burden of proving that a guilty plea is involuntary is on the defendant and must be proven by [a] preponderance of the evidence.”
 
 Id.
 
 (quotation omitted). “To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea.”
 
 Burrough v. State,
 
 9 So.3d 368, 373 (¶ 11) (Miss.2009) (citation omitted).
 

 ¶ 9. Vaughn argues his attorney misinformed him as to the amount of time he would ultimately serve in prison and, thus, he did not enter his guilty plea voluntarily and intelligently. Vaughn claims he was told he would be eligible for early release after serving eighty-five percent of his twenty-year sentence for manslaughter, but that he would have to serve his entire ten-year sentence for illegally possessing a firearm. The record reflects differently. Vaughn was sentenced to twenty years for manslaughter as a habitual offender and cannot, under the habitual offender statute, be granted an early release.
 
 See
 
 Miss.Code Ann. § 99-19-81 (Rev.2007). However, once he completes his sentence for the manslaughter conviction, he may be eligible for early release on the ten-year consecutive sentence for possession of a firearm by a felon. As such, Vaughn’s total thirty-year sentence may be eligible for reduction after he serves twenty years.
 

 ¶ 10. Vaughn alleges he was told by his attorney that he would be eligible for early release on the twenty-year sentence for manslaughter. In support thereof, Vaughn attached to his PCR motion affidavits from his mother and his sister alleging Vaughn’s attorney told one or both of them that Vaughn would be eligible for early release on the twenty-year sentence. Vaughn then compares his case to
 
 Myers v. State,
 
 583 So.2d 174 (Miss.1991).
 

 
 *911
 
 ¶ 11. In
 
 Myers,
 
 Timothy Myers was indicted for aggravated assault and advised by his attorney that if he took the case to trial, he would likely receive a sentence of twenty-five years but if he pleaded guilty he would receive less than twelve years.
 
 Id.
 
 at 175. After Myers pleaded guilty, the circuit judge sentenced him to sixteen years in the custody of the MDOC.
 
 Id.
 
 Myers filed a PCR motion and attached affidavits from his mother and sister, who were present in the meeting with Myers’s attorney when he was informed he faced up to twenty-five years in the custody of the MDOC if he went to trial but less than twelve years in the custody of the MDOC if he pleaded guilty.
 
 Id.
 

 ¶ 12. In reversing and remanding Myers’s case for further proceedings, the Mississippi Supreme Court stated: “The relevant distinction is between a ‘generalized prediction’ and a ‘firm representation’ of such lesser sentence.”
 
 Id.
 
 at 177 (quoting
 
 Sanders v. State,
 
 440 So.2d 278, 287 (Miss.1983) (superseded by statute on other grounds)). The supreme court determined that a firm representation was made to Myers that he would be sentenced to less than twelve years in the custody of the MDOC.
 
 Id.
 

 ¶ 13. In the instant case, Vaughn was aware of the maximum sentences he was facing on both charges against him. He was also aware that he was classified as a habitual offender regarding the manslaughter charge. The circuit court advised Vaughn prior to entering his plea that he would not be eligible for early release from his twenty-year sentence for manslaughter. However, assuming ar-guendo that Vaughn’s attorney advised him that he would be eligible for early release on the twenty-year sentence, this ease remains distinguishable from
 
 Myers
 
 because Vaughn’s attorney never told him he would face a lesser sentence by pleading guilty. The actual time Vaughn faced in his sentencing was never disputed. Vaughn knew he faced a twenty-year sentence. It is the possibility of early release after conviction in which he bases his argument. Nonetheless, the supreme court has held “that a mere expectation or hope, however reasonable, of a lesser sentence than might be meted out after conviction upon trial by jury will generally
 
 not
 
 be sufficient to entitle a petitioner to relief in cases such as this.”
 
 Id.
 
 (quoting
 
 Sanders,
 
 440 So.2d at 287).
 

 ¶ 14. Additionally, as noted by the circuit court, Vaughn’s plea-hearing transcript clearly reflects a dialogue between the circuit judge and Vaughn regarding Vaughn’s charges, the corresponding sentences, and the availability or prohibition of early release for the sentences on both charges. The transcript states:
 

 The State: There is a recommendation. That recommendation would be twenty years in the custody of the [MDOC] as an eighty-one habitual offender on the first count to the lesser[-]included offense of manslaughter. On the second count, ten years not as an habitual offender, to run consecutive to that first count....
 

 The Court: Mr. Vaughn, you have heard the statement of the Assistant District Attorney that his office recommends as to ... the lesser[-]included offense of manslaughter ... that you be sentenced to serve a term of twenty years in an institution under the supervision and control of the [MDOC]. That’s twenty years in prison as an eighty-one habitual. That means that you will not be eligible for parole or probation or any other reduction of sentence with regard to that count. And as to [possession of a firearm by a felon], their office recommends that
 
 *912
 
 you receive a sentence of ten years, but that sentence be imposed as a non-habitual. Although, it will be imposed or they recommend that it be imposed consecutive to the sentence imposed in [the manslaughter charge]. That is, it will begin after you complete the sentence [for manslaughter]. Now, my question to you, sir: Has anybody led you to believe that the State would recommend anything different from what he just said?
 

 Mr. Vaughn: No, sir.
 

 The Court: Do you understand that the maximum sentence on a charge of manslaughter is, in fact, twenty years?
 

 Mr. Vaughn: Yes, sir.
 

 The Court: Do you understand that the maximum sentence on the charge of felon in possession of a firearm is, in fact, ten years?
 

 Mr. Vaughn: Yes, sir.
 

 The circuit court then asked Vaughn if he was still willing to enter guilty pleas to both charges, to which Vaughn responded affirmatively.
 

 ¶ 15. Vaughn also executed a sworn plea petition prior to the plea hearing wherein he acknowledged his desire to plead guilty “to the crime[s] of [m]an-slaughter as [an] eighty-one habitual [and] possession of a weapon by a convicted felon, [as a]non-habitual.” Vaughn further stated in the plea petition that as a result of “lea [sic] bargaining,” he recognized the State would recommend: “Manslaughter-twenty years as an eighty-one habitual offender. Felon in possession of firearm-ten years non-habitual.”
 

 ¶ 16. We have held: “Solemn declarations made in open court carry a strong presumption of verity.”
 
 Jones v. State,
 
 885 So.2d 83, 87 (¶ 8) (Miss.Ct.App. 2004) (citation omitted). Furthermore, a “plea petition [is] not an oral statement in open court, but it [is] a sworn document presumptively prepared with an appreciation of its fateful consequences. [A] plea petition, similarly to statements in open court, may be used to discredit post-plea allegations.”
 
 Ward v. State,
 
 879 So.2d 452, 455 (¶ 11) (Miss.Ct.App.2003).
 

 ¶ 17. Vaughn stated both in his plea petition and in open court that he understood the sentences being imposed upon him for both the crime of manslaughter and the crime of possession of a firearm by a felon. As such, we find this issue to be meritless.
 

 III. Assistance of Counsel
 

 ¶ 18. It is well settled that in order for a defendant to prevail on an ineffeetive-assistance-of-counsel claim, he or she must “show by a preponderance of the evidence (1) that counsel’s performance was deficient, and (2) [that] but for the deficiencies, the trial court outcome would have been different.”
 
 Jones v. State,
 
 976 So.2d 407, 410-11 (¶ 6) (Miss.Ct.App.2008) (quoting
 
 Ward v. State,
 
 914 So.2d 332, 336 (¶ 12) (Miss.Ct.App.2005)). Additionally, under
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show “that counsel’s errors were so serious as to deprive the defendant of a fair trial....” Finally, “a presumption exists that the attorney’s conduct was adequate.”
 
 Hull v. State,
 
 983 So.2d 331, 333-34 (¶ 11) (Miss.Ct.App.2007) (citing
 
 Burns v. State,
 
 813 So.2d 668, 673 (¶ 14) (Miss.2001)).
 

 ¶ 19. Vaughn claims that because his counsel allegedly misinformed him as to the possibility of early release on his sentences, he was denied effective assistance of counsel in entering his guilty pleas. As discussed above, we find no merit to his argument that his guilty pleas were involuntarily or unintelligently entered. Vaughn asserted in his plea peti
 
 *913
 
 tion and again in open court that he understood the ramifications of pleading guilty to both charges. He was questioned regarding his understanding of the consequences of pleading guilty. He told the circuit court that he was aware he would have to serve the entire twenty-year sentence on his manslaughter conviction if he pleaded guilty. He also acknowledged his status as a habitual offender on the manslaughter charge and the prohibition against early release.
 

 ¶ 20. Vaughn’s statements to the circuit court and his plea petition reflect an understanding of the consequences he faced in pleading guilty to manslaughter and possession of a firearm by a felon. As such, we find no merit to his argument that his counsel improperly explained his potential sentences for both charges. Even if he had been misinformed by his attorney as to a possible early release, the circuit court clearly outlined the ramifications of his pleas. Accordingly, Vaughn fails to establish a prima facie case for ineffective assistance of counsel. This issue is without merit.
 

 ¶ 21. THE JUDGMENT OF THE TU-NICA COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.