# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00397-COA

**REGINALD ALEXANDER**                                         **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2022 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LISA MISHUNE ROSS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 09/26/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Reginald Alexander appeals the DeSoto County Circuit Court's denial of his motion for post-conviction relief, which Alexander filed to set aside his plea of guilty to two counts of sexual battery.  He claims that he pleaded guilty because his counsel was ineffective and misrepresented to Alexander the sentence that he would receive.  After conducting an evidentiary hearing, the circuit court denied Alexander's motion.  Considering the arguments of the parties and the relevant caselaw, we affirm the circuit court's order.

## Facts

*The Indictment*

¶2.     On December 16, 2016, Alexander was indicted on two counts of sexual battery in

violation of Mississippi Code Annotated section 97-3-95(1)(c) (Rev. 2014).[1] The indictment alleged that between May 1, 2015, and August 30, 2015, Alexander had placed his penis in the mouth of C.D.P., who was a minor between the ages of fourteen and sixteen. At the time, Alexander, age nineteen, was thirty-six months or more older than C.D.P. Because Alexander was younger than twenty-one, the maximum penalty he could receive on each count was five years' incarceration and a $5,000 fine.[2] If convicted of both counts, Alexander faced a maximum prison term of ten years and a maximum fine of $10,000.[3]

*The Motion to Suppress*

---

[1] Section 97-3-95(1) provides:

A person is guilty of sexual battery if he or she engages in sexual penetration with:
    (a) Another person without his or her consent;
    (b) A mentally defective, mentally incapacitated or physically helpless person;
    (c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or
    (d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.

[2] Section 97-3-101(2)(a) (Rev. 2014) provides:

Every person who shall be convicted of sexual battery under Section 97-3-95(1)(c) who is at least eighteen (18) but under twenty-one (21) years of age shall be imprisoned for not more than five (5) years in the State Penitentiary or fined not more than Five Thousand Dollars ($5,000.00), or both.

[3] Apparently Alexander and the victim had sexual intercourse after the victim reached the age of sixteen, and Alexander was only charged with acts done when the victim was fourteen or fifteen.

2

¶3.    Alexander retained counsel, David Walker, who, on August 21, 2017, filed a motion to suppress a letter of apology Alexander had written during an interview with the investigating detective. While the case was pending, the State sent two offers to negotiate a plea. In the first letter, dated January 16, 2017, the State offered to recommend ten years to serve followed by ten years of post-release supervision (PRS) (with five years reporting) for Count 1 and to remand Count 2 to the files. This recommendation exceeded the maximum sentence that Alexander could receive under the statute (five years) because of his age. In the second letter, dated February 3, 2017, the State offered five years to serve for Count 1 and five years of reporting PRS for Count 2. Alexander rejected both offers.

¶4.    The circuit court held a hearing on Alexander's motion to suppress on November 20, 2017. Detective Steve English testified that Alexander voluntarily came to his office to be interviewed. English read Alexander his *Miranda* rights.[4] Alexander signed a waiver of those rights and did not ask for an attorney. During the interview, English asked Alexander if he wanted to write an apology letter to the parents. English told Alexander that if he wrote the letter, C.D.P.'s parents might not pursue the charges. English testified that he did not threaten, coerce, or promise Alexander anything and that Alexander freely and voluntarily wrote the apology letter. In it, Alexander specifically admitted to having oral sex with their daughter. English also testified that he told Alexander that he could leave the interview at any time, in which case English would write up the investigation and give it to the District

_____

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Attorney to present to the grand jury. Alexander did not testify at the suppression hearing and his counsel and the State argued the matter to the circuit court. The circuit court listened to the audiotape of the interview and found that there was no custodial interrogation and no intimidation. The court denied the motion to suppress.

*The Plea Petition*

¶5.    That same day, Alexander signed a plea petition. According to Alexander, Walker told him that he could maintain his innocence but still plead guilty because it was in his best interest to do so. This is known as an *Alford* plea (under *North Carolina v. Alford*, 400 U.S. 25 (1970)).[5] Indeed, the printed title to Alexander's plea petition reads "Petition to Enter Plea of Guilty" followed by the handwritten phrase "(pursuant to NC v. Alford)."

¶6.    Alexander signed each page of his plea petition, which was filed on November 20, 2017. The petition reflected that Alexander had completed high school and four semesters of college, that he was mentally competent, and that he could read and write. He pleaded guilty to the two counts in the indictment. He averred that he understood his constitutional rights, including but not limited to the right to a speedy trial, to cross-examine witnesses, to compel favorable evidence, to be present at all stages of the trial, to testify in his defense, to have a unanimous jury verdict before being found guilty, and that he was presumed innocent

---

[5] In that case, "after Alford's plea of guilty was offered and the State's case was placed before the judge, Alford denied that he had committed the murder but reaffirmed his desire to plead guilty to avoid a possible death sentence and to limit the penalty to the 30-year maximum provided for second-degree murder." *Alford*, 400 U.S. at 31.

4

if he should plead not guilty. In the petition, Alexander confirmed that no one had made any "promises or inducements of any kind to me or within my knowledge to anyone else that I will receive a lighter sentence, probation, early release or any other form of lenience if I plead 'guilty.'"

¶7. In the plea petition, Alexander also said that his lawyer had informed him of the maximum and minimum punishment of the offenses charged, which the petition reflected to be five years' imprisonment and $5,000 in fines for each count. The petition contained the following provision concerning the result of plea negotiations between the parties:

> 10. (b) As a result of plea bargaining, my attorney and I have reached an agreement with the District Attorney's office concerning my offer to plead guilty to the charge(s) listed in paragraph three. It is my understanding that the District Attorney will recommend to the Court that I receive a sentence as follows or see attached plea agreement:
>
> > count 1: open plea, Defendant will seek probation; State, 5 years MDOC[;]
> >
> > count 2: State agrees to recommend 5 years of post-release supervision on count 2[.]

However, in the plea petition, Alexander further stated:

> I understand that this agreement is not binding on the Court and that if my guilty plea is accepted by the Court, the Court may impose the same sentence as if I had pleaded "not guilty" and been found guilty by a jury.

Finally, concerning his attorney's services, Alexander said that Walker was competent and "had done all that anyone could do to counsel and assist me, and I am fully satisfied" with his help.

5

*The Plea Hearing*

¶8.    The circuit court also held the plea hearing on November 20, 2017, and considered the plea petitions of three defendants at the same time, including Alexander's. The record of the hearing reflects questions by the court and the answers of each defendant individually. The judge confirmed that each defendant had reviewed the petitions, gone over it with their attorneys, and had no complaints about their attorneys' representation.

¶9.    The court then addressed Alexander individually about the charges against him and his understanding of the potential sentence he could receive for each. The State proceeded to set out the proof it would present to support the charges, including the testimony of the mother of the victim who found messages on her daughter's phone that indicated the child and Alexander were having sexual relations. The State would also present testimony from a child advocacy expert of her interview with the girl and the girl's admissions of having oral sex with Alexander. In addition, the State told the court that after being read his rights, Alexander admitted to having oral sex with the victim and that he wrote an apology letter to her parents for his actions.

¶10.    The circuit court noted that Alexander was entering a plea pursuant to *Alford* and that under *Alford*, Alexander was allowed to plead guilty without actually admitting his guilt. Alexander confirmed his understanding of this and stated that he wanted to enter such a plea. Alexander's attorney told the court that he was satisfied that the proof was sufficient to get the matter before a jury.

¶11.    After questioning the other two defendants about their specific charges, the circuit court returned to group questioning. The court confirmed that none were under the influence of drugs or alcohol and none had any emotional or mental impairment. The court specifically noted that it was not bound by any recommendation that the State or the defense attorneys made, and all three defendants said they understood this. The court confirmed with the three defendants that no one had made any promises to them about what their sentences would be, nor had anyone threatened, pressured, or coerced them to plead guilty. The court specifically addressed Alexander, asking:

> Court:    Mr. Alexander, are you asking that I accept your plea of guilty because it is in your best interest?
>
> A:    Yes. Ma'am.

The court accepted Alexander's plea, finding it to have been knowingly and voluntarily made. Alexander's case was continued to February 22, 2018, for sentencing.

*The Sentencing Hearing*

¶12.    At the February sentencing hearing, the circuit court confirmed again with Alexander that his attorney had been available to him and answered all his questions, and that he had no complaints about Walker's representation. The victim's mother testified about the impact of Alexander's actions on her daughter and their family. She stated that her daughter had been an honor student on her way to being accepted into West Point, but now the girl is frightened and cannot be far from home. C.D.P. had also contemplated suicide and was in counseling. The State also called Detective English who investigated the case. But he only

7

testified that Alexander had been involved in a prior incident when he was in high school when he allegedly had oral sex with a fourteen-year-old female. But, English said, there was insufficient evidence of this to obtain an indictment.

¶13. Alexander called his mother, Tonya Clayborne, to testify. She told the court that Alexander was her only son and that he was working at FedEx while going to school at the University of Memphis. She said that he helps people and that his professors have told her that Alexander has been an asset to the school. She testified he had not gotten into any trouble since this incident and he did not drink or use drugs. She had letters of recommendation from his superiors at FedEx and from his professors.

¶14. Alexander testified as well, telling the court that he was majoring in psychology while minoring in music production and that he planned to go to law school. He said that in his spare time, he prayed, read the Bible, wrote poetry, and visited family. Alexander identified a letter written to him by the victim in which she professed her love for him. Alexander testified that the victim initiated contact with him over Instagram. At that time he was a freshman at Belhaven College in Jackson and he was 200 miles away in a different city from the victim. He said he specifically told her that he did not want to deal with an underage girl. But she pressed and they talked on the phone. She admitted she was underage, but she confided in him about other personal matters and they continued to talk and play video games. He admitted that what he did was wrong, but then he read the court a letter in which he said he too felt like a victim because he trusted a girl who was not completely honest with

him.

¶15.    After both the State and defense counsel argued their positions regarding sentencing, Alexander again personally addressed the court.  After considering the testimony, the circuit court noted, among other things, Alexander's knowledge that the victim was underage.  The court sentenced him to serve five years in custody for Count 1 and five years of PRS for Count 2.

¶16.    Alexander's attorney, Walker, died on June 30, 2018.  Alexander took no steps to challenge the voluntariness of his plea or the effectiveness of his counsel's representation prior to Walker's death.

*The Motion for Post-Conviction Relief*

¶17.    Exactly three years after his sentencing, on February 22, 2021, Alexander filed a motion for post-conviction relief (PCR) pursuant to Mississippi Code Annotated section 99-39-5 (Rev. 2015).[6]  In it, Alexander argued that Walker had inadequately represented him and

---

[6] Section 99-39-5(1)-(2) provide in part:

(1) Any person sentenced by a court of record of the State of Mississippi, including a person currently incarcerated, civilly committed, on parole or probation or subject to sex offender registration for the period of the registration or for the first five (5) years of the registration, whichever is the shorter period, may file a motion to vacate, set aside or correct the judgment or sentence, . . . if the person claims:
. . . .
         (g) That his plea was made involuntarily;
. . . .
(2) A motion for relief under this article shall be made . . . in case of a guilty plea, within three (3) years after entry of the judgment of conviction. . . .

9

coerced him into pleading guilty by telling him that he had reached an agreement with the trial judge and the district attorney to suspend all of Alexander's sentence if he pleaded guilty. Alexander argued that his pleas were not knowingly and voluntarily made because they were predicated on his attorney's misrepresentations that he would not be required to do any jail time. Alexander also contended that his attorney's representation was ineffective because he failed to argue that Alexander's sentence was disproportionate when compared to the sentences of two other defendants who were convicted of similar or more serious charges and received either suspended sentences or less than five years. Moreover, Alexander argued, Walker should have sought to have Count 2 dismissed. Alexander signed and swore to the motion, and attached an affidavit from his mother supporting his allegations. In her affidavit, Clayborne recounted meetings with Walker in which he assured Alexander that he had worked out a deal with the State and the court so that Alexander would be sentenced to probation. She further stated that Walker told Alexander not to tell the court about the agreement that had been reached.

¶18. The circuit court ordered the State to file a response, which it did on September 23, 2021. It attached Alexander's plea petition and the transcript of his plea and sentencing hearings to the response.

*Hearing on PCR Motion*

¶19. On February 28, 2022, the circuit court conducted an evidentiary hearing on

10

Alexander's PCR motion.[7]  Clayborne and Alexander testified and several exhibits were entered.  Clayborne testified that she had retained Walker to represent her son, but she had difficulties reaching Walker for several months because Walker was ill.  Walker told her and her son that because Alexander was a first-time offender, Walker would try to get him probation and have the charge reduced to a misdemeanor.  Clayborne said that Alexander always wanted to go to trial and they rejected the plea offers that the State made in two letters that were entered into evidence.  She said that Walker told them he had worked it out with the District Attorney's office and with the judge that Alexander would not serve any jail time.  After Alexander was sentenced, she asked Walker what happened to probation, but Walker only responded that "it was not an option."  That was the first time she and her son had heard Walker say that.  She further testified that her son would have never pleaded guilty if he had known he would be a two-time convicted felon, one felony away from being a violent habitual offender.  On cross-examination, the State asked Clayborne to review Alexander's plea petition, which she admitted she had reviewed previously and in which there was a reference to the defendant's recommendation of probation.

¶20.    Alexander testified that he wanted to go to trial because he had nothing to gain by

[7] Mississippi Code Annotated section 99-39-19(1) (Rev. 2020) provides:

> If the motion is not dismissed at a previous stage of the proceeding, the judge, after the answer is filed and discovery, if any, is completed, shall, upon a review of the record, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice shall require.

taking a plea. He took the plea because Walker told him that he would not serve any time in prison. Had he known that was not true, he would not have entered a plea. However, Alexander admitted that he did not speak to Walker about his failure to ask the judge to consider probation. Alexander said he did not understand what was happening in the courtroom when he was sentenced, saying he "was going off my attorney's advice." Alexander testified that he was not aware that if he had a complaint about Walker, he could have told the judge. He said that he did not recall the judge telling him during the sentencing hearing that she did not have to accept the recommendations concerning what sentence to impose.

¶21. The State called no witnesses but simply argued against Alexander's petition pointing to the contents of the plea petition and the plea and sentencing hearings. After hearing the arguments, the circuit court stated that Walker did an excellent job in limiting his client's exposure. Alexander could have received ten years to serve, but only received five years. The court also noted that Alexander took responsibility for his actions when he entered an *Alford* plea.

¶22. The court took the matter under advisement and issued its written order denying Alexander's motion on April 12, 2022. Among other things, in the written order the court concluded that Alexander's plea was voluntarily and knowingly made, pointing out that a plea is voluntary if the court corrects any misinformation given by defense counsel during the plea colloquy. Moreover, the court cited the plea hearing transcript to support its

findings, noting that Alexander's statements and responses to the court during the plea hearing are presumed to be valid. The court further found that Alexander had not proven that Walker's representation fell below an objective standard of reasonableness, nor had he shown that but for counsel's alleged unprofessional errors, the result of Alexander's case would have been different. The court noted that Walker had filed a motion to suppress Alexander's letter of apology and that he secured Alexander a five-year sentence when Alexander was facing a potential day-to-day sentence of ten years. Moreover, because Alexander's sentence fell within the applicable statutory sentencing limits, there was no inference of gross disproportionality.

¶23. Alexander appeals from the circuit court's order and argues that Walker rendered ineffective assistance of counsel because he misrepresented the sentence that the judge would impose.[8]

### Standard of Review

¶24. "When reviewing a circuit court's decision to deny a petition for post conviction relief

---

[8] Although Alexander mentions in the "Statement of the Issues" and "Summary of the Argument" portions of his brief that he also contends that the trial court erred in finding that his sentence was not disproportionate, Alexander presents no argument or authority on that issue. The Mississippi Supreme Court has held that the failure to cite authority for an argument precludes the appellate court from addressing an issue. *Lockhart v. Lockhart*, 324 So. 3d 777, 794 (¶59) (Miss. 2021) (citing *Hale v. State*, 191 So. 3d 719, 724 n.1 (Miss. 2016)); *see also Jordan v. State*, 918 So. 2d 636, 657 (¶60) (Miss. 2005) ("Jordan makes no argument under this issue [trial court's refusal to admit certain evidence], and he cites no authority. Thus, we decline to address these claims."(citing *Brown v. State*, 798 So. 2d 481, 497, 506 (Miss. 2001))). Accordingly, we decline to address Alexander's claims regarding sentence disproportionality.

this Court will not disturb the circuit court's factual findings unless they are found to be clearly erroneous." *Cleveland v. State*, 359 So. 3d 669, 671 (¶4) (Miss. Ct. App. 2023) (citing *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999)). "Where questions of law are raised the applicable standard of review is de novo." *Id*.

**Discussion**

¶25. Alexander contends that his Sixth Amendment right to effective assistance of counsel was violated when Walker misrepresented to him that he had negotiated a plea deal for Alexander to be sentenced to probation in exchange for his *Alford* guilty plea.

¶26. "To succeed on an ineffective-assistance-of-counsel claim, the defendant must meet both prongs of the test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Beasley v. State*, 355 So. 3d 245, 248 (¶6) (Miss. Ct. App. 2022). First, he must show that his counsel's performance was deficient, and second, he must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. The second prong has also been stated as requiring a showing "that the deficiency prejudiced the defense of the case." *Harrell v. State*, 947 So. 2d 309, 313 (¶10) (Miss. 2007).

> To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Dickerson v. State*, 357 So. 3d 1010, 1022 (¶41) (Miss. 2021).

¶27. "Trial counsel is presumed competent, and the burden of proving that counsel's performance was deficient and prejudicial falls upon the Appellant." *Branch v. State*, 882

14

So. 2d 36, 52 (¶26) (Miss. 2004); *see also Luckett v. State*, 346 So. 3d 509, 511 (¶6) (Miss. Ct. App. 2022) ("A presumption exists that the attorney's conduct was adequate."). In cases where a defendant has entered a plea of guilty, and later contends that his plea was entered because of the alleged ineffective assistance of counsel, "the defendant must demonstrate that his counsel's conduct proximately resulted in the guilty plea, and that but for counsel's errors, he would not have entered the plea." *Bell v. State*, 310 So. 3d 837, 840 (¶7) (Miss. Ct. App. 2021). The defendant must prove the elements of ineffective assistance of counsel by a preponderance of the evidence. *Vaughn v. State,* 85 So. 3d 907, 910 (¶8) (Miss. Ct. App. 2012); *Moreno v. State*, 967 So. 2d 701, 703 (¶4) (Miss. Ct. App. 2007).

¶28. Alexander cites two cases in which the defendants alleged they pleaded guilty to charges based on what their attorneys told them their sentences would be. However, both are cases where the trial court erred in not granting a hearing on the PCR motion, not in denying the motion on the merits. In *Myers v. State*, 583 So. 2d 174, 175 (Miss. 1991), the defendant filed a PCR motion alleging that his attorney told him that if he entered a plea of guilty to an aggravated assault charge, the court would sentence him to no more than twelve years, but if he went to trial, he would likely receive a sentence of twenty-five years. Myers's mother confirmed this in her affidavit, adding that her son continuously told the attorney he was not guilty and wanted to go to trial. *Id*. Myers's sister also submitted an affidavit attesting that Myers's attorney told him that he would not receive any more than twelve years and to answer in the affirmative to any question the judge asked. *Id.* The circuit court summarily

15

dismissed Myers's motion, *id.*, but the supreme court reversed, finding that Myers's motion had "[met] the pleadings requisites of the PCR Act" and that he was "entitled to proceed past the pleading stage." *Id.* at 178. The supreme court noted:

> The question whether a plea of guilty was a voluntary and knowing one necessarily involves issues of fact. Advice received by the defendant from his attorney and relied upon by him in tendering his plea is a major area of factual inquiry.

*Id.* at 177. The Court further noted that "[s]till, nothing said here should be taken to intimate any view on the merits" of Myers's claim. *Id.*

¶29.    Alexander also cites *Mitchener v. State*, 964 So. 2d 1188, 1189 (¶1) (Miss. Ct. App. 2007), where the defendant filed a PCR motion and alleged that he received ineffective assistance of counsel because his attorney assured him that he would receive a sentence of time served and probation if he pleaded guilty. Mitchener had been charged with kidnapping because he held a visitor to his property at gunpoint for several hours. *Id.* at 1190 (¶3). Mitchener admitted to holding the individual at gunpoint and after an extensive sentencing hearing, the court sentenced Mitchener to twenty years. *Id.* at (¶4). Mitchener filed a PCR and attached his own affidavit as well as several others. In his PCR affidavit, Mitchener identified six different times he met with his attorney who assured him he would get him probation with time served. *Id.* at 1190-91 (¶5). Mitchener attached affidavits from his ex-wife, his cousin, and a friend, all of whom confirmed what the attorney told Mitchener. *See id.* at 1191-92 (¶¶6-8). Despite these affidavits, the circuit court summarily denied Mitchener's PCR motion, finding that the plea hearing transcript and plea petition indicated

16

that Mitchener was informed of the sentencing possibilities. *Id.* at 1192 (¶9). On appeal, this Court reversed the summary disposition of Mitchener's motion and remanded the matter for a full evidentiary hearing. We noted that the record of the proceedings in the case revealed a "facially correct guilty plea." *Id.* at 1193 (¶14). Nonetheless, the allegations in the affidavits did present a colorable claim that defense counsel had misrepresented the length of sentence Mitchener would get and, on that basis, we reversed and remanded the case for an evidentiary hearing. *Id.* at 1194-95 (¶18). We specifically stated, however, that we were expressing no opinion on the merits of Mitchener's PCR motion and held only that he had presented enough information to warrant a hearing. *Id.*

¶30.    Unlike *Myers* and *Mitchener*, the case before us involved the review of a ruling following an evidentiary hearing where the merits were decided by the circuit court. More applicable to Alexander's facts are those of the defendant in *McCray v. State*, 785 So. 2d 1079 (Miss. Ct. App. 2001). In that case, *McCray* pleaded guilty to two counts of the sale of a controlled substance. *Id.* at 1081 (¶1). He was sentenced to two separate twelve-year terms of imprisonment. *Id.* McCray filed a motion to vacate his guilty plea and sentence, claiming that he received ineffective assistance of counsel because his attorney promised him he would be sentenced to only three months' probation. *Id.* at (¶3). We affirmed the circuit court's denial of McCray's motion and noted that "a plea is rendered voluntary despite advice given to the defendant by his attorney, if the trial judge questions the defendant and explains his rights and the effects and consequences of the plea on the record." *Id.* at (¶4) (citing

17

*Roland v. State*, 666 So. 2d 747, 750 (Miss. 1995)).

¶31.   *Sandifer v. State*, 799 So. 2d 914 (Miss. Ct. App. 2001), a PCR case, is also applicable.  There, this Court also refused to vacate a guilty plea when Sandifer's attorney allegedly promised him a sentence of less than the twenty years he received. *Id*. at 919 (¶10). Sandifer, who had been indicted for the sale of cocaine, pleaded guilty and was sentenced to a term of twenty years with ten suspended and five years probation.  *Id*. at 916 (¶2). Sandifer later filed a PCR motion claiming that his plea was not voluntarily made because his attorney had promised that he would be sentenced to only an eight-year term.  *Id*. at 917 (¶9).  In affirming the trial court's denial of Sandifer's motion, we held that "Sandifer's claim is belied by his own sworn statements," both in his plea petition and during his plea hearing. *Id*.  In his plea petition, Sandifer swore that he knew the State was recommending twenty years with ten suspended.  *Id*.  Sandifer was also informed in the petition and at his plea hearing that he faced a maximum of thirty years.  *Id*.

¶32.   Although the circuit courts in *McCray* and *Sandifer* did not conduct evidentiary hearings, the only difference between those cases and Alexander's is that Alexander attached his mother's supporting affidavit to his PCR motion and, significantly, the trial court granted Alexander an evidentiary hearing.  The court heard testimony from Clayborne and from Alexander as well.  Alexander, who was also represented by counsel, was given every opportunity to present his evidence and argue his claim to the court.

¶33.   Although the State presented no witnesses at the hearing on the PCR motion, the

18

circuit court did have the transcripts of Alexander's plea hearing and his sentencing hearing, in which Alexander testified under oath. We have held that those "solemn declarations made in open court" also "carry a strong presumption of verity." *Vaughn*, 85 So. 3d at 912 (¶16) (quoting *Jones v. State*, 885 So. 2d 83, 87 (¶8) (Miss. Ct. App. 2004)). During the plea hearing, the court specifically clarified with Alexander that, even with a guilty plea, he could still be sentenced to the maximum term of five years and a $5,000 fine on each count. Alexander was specifically asked whether anyone had made any promises to him to plead guilty and whether he understood that the court was not bound by any sentence either the State or defense counsel had recommended. Alexander answered that no one had promised him anything and that he understood that the court was not bound by the recommendations in the plea petition.[9]

---

[9] The importance of plea-hearing testimony is shown in this Court's recent decision in *Holliday v. State*, No. 2022-CA-00149-COA, 2023 WL 2884520 (Miss. Ct. App. April 11, 2023), which is subject to certiorari review at the time of this writing, where we rejected a defendant's claim that his plea of guilty to statutory rape and sexual battery was involuntary because his counsel was ineffective by, among other things, failing to timely accept a plea offer. *Id.* at *2 (¶15). In that case, Holliday claimed that with prior court-appointed attorneys, he had been offered pleas of ten and then fifteen years. *Id.* at *1 (¶3). He later pleaded guilty and was sentenced to thirty years. *Id.* at (¶6). In his PCR motion, Holliday claimed that he pleaded guilty "with the expectancy of a much lesser sentence than thirty years day-for-day." *Id.* at *2 (¶7). He asserted that his attorney's representation was ineffective because, among other things, he "failed to timely accept the original plea offer." *Id.* In his affidavit, Holliday claimed he had been "mislead." *Id.* at (¶9). In affirming the trial court's denial of his PCR motion, we relied heavily on the transcript of Holliday's plea hearing and noted that the court explained to him the nature of the charges and the consequences of his guilty plea. *Id.* at *3 (¶19). Holliday affirmed his awareness of what the court was telling him. *Id.* We noted that in his PCR motion, Holliday did not challenge the voluntariness of his plea but centered his argument on his expectation that he would

19

¶34. In addition to Alexander's plea hearing, the circuit court considered Alexander's plea petition itself, which this Court has noted is "not an oral statement in open court, but it is a sworn document presumptively prepared with an appreciation of its fateful consequences." *Vaughn*, 85 So. 3d at 912 (¶16). In his plea petition, Alexander acknowledges that, as a result of plea negotiations, the State and the defense agreed on a recommendation of supervised probation only on Count 2. There was no agreement on Count 1; on that count, the plea petition indicated the State was recommending a sentence of five years but the defense was seeking probation. Clearly the petition, which both Alexander and his mother read, contradicts their testimony given three years later.

¶35. Finally, Alexander had a separate sentencing hearing, during which both he and his attorney argued for leniency. The victim's mother testified, but so did Alexander and his mother. Alexander also read to the court a letter he had written concerning his future plans and past mistakes. Nothing in the transcripts of these hearings indicated that a plea bargain of probation had been reached.

¶36. Taking the entire record into consideration, we find no basis to conclude that the circuit court erred in its findings that the plea was voluntary and that Alexander's counsel had

---

receive a lesser sentence. *Id.* at (¶21). But we noted that "this expectation was clearly addressed by the trial court during his plea hearing." *Id.* We held that Holliday's plea was knowingly and voluntarily made and that his ineffective assistance of counsel claim had no merit. *Id.* at (¶22). Similarly, in this case, at Alexander's plea hearing, the circuit court clearly clarified the maximum penalties he faced and confirmed with Alexander his understanding that the court was not bound by any recommendations that may be made concerning his sentence. Alexander affirmed his knowledge of these facts.

not ineffectively represented him. Whether Walker materially misrepresented to Alexander that he had negotiated a sentence of probation was a fact question for the circuit court to decide. Although Walker could not present his version of events, there was other evidence for the court to consider in addition to Alexander's and his mother's testimony. Given the record before us, we cannot conclude that the circuit court was clearly erroneous in its findings. Accordingly, we find the circuit court did not err in denying Alexander's PCR motion on the basis of ineffective assistance of counsel.

### Conclusion

¶37. Because the circuit court's decision was not clearly erroneous, legally in error, or an abuse of its discretion, we affirm the circuit court's denial of Alexander's PCR motion.

¶38. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

21