# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01182-COA

**NATHANIEL ROBERSON A/K/A NATE**                                         **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                              **APPELLEE**

DATE OF JUDGMENT:                  09/14/2021
TRIAL JUDGE:                             HON. CHARLES E. WEBSTER
COURT FROM WHICH APPEALED:      COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         FRANKLIN DAVIS ROSENBLATT
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                   BY: ALLISON HORNE
NATURE OF THE CASE:               CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                      AFFIRMED - 07/25/2023
MOTION FOR REHEARING FILED:

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Nathaniel Roberson appeals from the Coahoma County Circuit Court's order granting in part and denying in part his motion for post-conviction collateral relief (PCR). Roberson argues that the circuit court was clearly erroneous by failing to find that his guilty plea was involuntary and that his counsel, David Tisdell, was constitutionally ineffective. Finding no reversible error, we affirm the circuit court's order.

## FACTS AND PROCEDURAL HISTORY

¶2.     This case arises from the murder of Ethel Lewis in Clarksdale, Mississippi, on December 15, 2012. Lewis was an eighty-year-old woman who lived alone in her house on Issaquena Street. Police received a tip from Jeremey Cockerell that Roberson had robbed

Lewis and stolen her car. When police arrived at Lewis' home, they found her body, which had been badly beaten and severely burned. Police determined that an accelerant had been used, presumably in an effort to destroy any evidence of the crime. The body was described as being burned beyond recognition. Lewis' purse had been emptied on the bed, and her 2002 Toyota Avalon was missing.

¶3. The police eventually found the missing car abandoned in Ruleville, Mississippi. Roberson and several other individuals were brought in for questioning. Roberson was interviewed several times over the course of the next few days. Initially, Roberson denied that he was involved in any crime. He eventually admitted that he had stolen the car after finding the keys inside the vehicle. Later, he also admitted to entering Lewis' home. Roberson stated that he and Cockerell had decided to rob Lewis and that they planned the crime over several days. Roberson stated that he entered the house alone and Cockerell stood watch. Roberson stated that he tried to "hug" Lewis, and she became afraid and passed out. He further stated that he kicked Lewis at some point. Roberson stated that he tried to burn the house down by stuffing paper in a heater, but he did not mention using any accelerant. Roberson admitted to taking the car, discarding some clothes and belongings he took from the home in a trash can near his friend's house, and taking his friends for a joyride in the car.

¶4. Police found Roberson's DNA on a cup of water and his left palm print on a notepad inside Lewis' home. Lewis' DNA was also found on Roberson's coat. Furthermore, the police discovered that Roberson's name had been written on a guest list at the home in what

2

was identified as Lewis' handwriting.[1]  Roberson was twenty-two days away from his eighteenth birthday when the murder was committed.

¶5.    Roberson was indicted for capital murder and motor-vehicle theft on May 30, 2013. The circuit court appointed Public Defender David Tisdell as Roberson's attorney.  In addition, Lela Hubbard, a mitigation specialist for the Office of Capital Defense Counsel, assisted Tisdell in a limited capacity.  Roberson pled guilty to both crimes on January 23, 2015.  The court held a *Miller*[2] hearing on sentencing on February 18, 2015, and sentenced Roberson to serve life in prison without eligibility for parole for the murder conviction and ten years for the motor-vehicle theft.

¶6.    Roberson filed his first PCR motion pro se in June 2015, which the trial court denied. He filed his second PCR motion through counsel in January 2018.  Therein Roberson claimed that his guilty plea was involuntary and that he received ineffective assistance of counsel.[3]  The court held an evidentiary hearing, and four witnesses testified: (1) Tisdell, (2) Hubbard, (3) Hubbard's supervisor, Andre de Gruy, and (4) Roberson.

¶7.    At the evidentiary hearing, Tisdell testified that he sufficiently communicated with

---

[1] It appeared that Lewis maintained a guest list at her residence where she would write the names of people who visited her.  Roberson admitted that Lewis knew him because his mother had worked for Lewis earlier in life.  The evidence suggested Lewis voluntarily let Roberson into the home.

[2] *Miller v. Alabama*, 567 U.S. 460, 489 (2012).

[3] Roberson also initially claimed that the *Miller* factors were not sufficiently considered, that his sentence violated the United States and Mississippi Constitutions, and that the waiver of jury sentencing was involuntary.  However, the sentencing claims were summarily dismissed by the court, and the claim regarding the jury waiver has been abandoned on this appeal.

Roberson throughout his case. Tisdell testified that he discussed the evidence against Roberson, the defenses available to Roberson, and the risks associated with a trial. According to Tisdell, he attempted to negotiate a plea, but the State would not agree to any deal. Tisdell testified that Roberson admitted to committing crimes and wanted to plead guilty. He testified that he communicated to Roberson that no plea deal was available, and he explained the potential minimum and maximum punishments. Tisdell testified that Roberson knew he could be sentenced to life without parole but wanted to plead guilty anyway. Although Tisdell testified that he considered Roberson to be intellectually a "little slow," Tisdell testified that Roberson was able to communicate with him and understand his situation.

¶8. Mitigation specialist Hubbard testified that she interacted with Roberson more than his lawyer Tisdell. She testified that Roberson told her he did not kill Lewis and wanted to "be able to come home." According to Hubbard, Tisdell told her there was a plea deal. She testified that when it came time for Roberson to sign the plea petition, he would not sign it. Further, she testified that she encouraged Roberson to "take the deal" because she believed a deal was in place. She testified that Tisdell never corrected her and that she did not know the plea was an "open plea."

¶9. Hubbard's supervisor, De Gruy, testified that when he met with the district attorney's office to discuss other cases, Roberson's case came up. He testified that he tried to negotiate a plea of life with parole eligibility for Roberson, but the State did not offer any deal. He testified that Hubbard believed there was a deal. De Gruy testified that he discussed the

4

assumed plea offer with Tisdell who told him there was no offer from the State. De Gruy testified that he thought Hubbard misunderstood there was no plea deal.

¶10. Roberson testified that Tisdell did not communicate with him well and that Tisdell allowed him to review discovery only once. According to Roberson, Tisdell told him he would have to plead guilty to both the murder and the vehicle-theft charges, rather than just the vehicle-theft charge. Additionally, Roberson testified that he told Tisdell that he did not kill Lewis. Roberson testified that he thought he was being offered a plea deal that would get him out of jail in ten years. Roberson testified that he fired Tisdell at one point, and Tisdell "got up and walked out . . . on me." Roberson testified that Tisdell did not explain the plea petition to him. Furthermore, Roberson testified that he did not look at the plea petition but signed it because Tisdell told him to. In addition, Roberson testified that Tisdell told him to answer yes to all the judge's questions and that he would be out in ten years. Roberson testified that he would not have pled guilty if he had known that he could receive a sentence of life without parole.

¶11. In its ruling, the circuit court denied Roberson post-conviction relief on both the involuntary-plea claim and ineffective-assistance claim. The court granted relief to Roberson for his claim regarding his sentence for motor-vehicle theft, resentencing Roberson to five years to correspond with the value of the stolen car. Roberson now appeals.

**STANDARD OF REVIEW**

¶12. "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if the trial court abused its discretion and the decision is

5

clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Lofton v. State*, 313 So. 3d 528, 530 (¶7) (Miss. Ct. App. 2021) (quoting *Green v. State*, 242 So. 3d 176, 178 (¶5) (Miss. Ct. App. 2017)).

## DISCUSSION

### I. Statutory Bars

¶13. Roberson claims that his PCR motion should survive the statutory bars of the Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA) because his claims implicate fundamental constitutional rights and present exceptional circumstances warranting review.

¶14. Mississippi Code Annotated section 99-39-23(6) (Rev. 2020) states that any order that grants relief, denies relief, or dismisses a PCR motion bars any second or successive motion. Roberson filed his first PCR motion in 2015, which was denied. Unless this current PCR motion meets a statutory exception, Roberson's second PCR motion would be statutorily barred. Roberson argues that the fundamental-rights exception applies as discussed in *Rowland v. State*, 42 So. 3d 503, 507 (¶12) (Miss. 2010), *overruled by Howell v. State*, 358 So. 3d 613, 615-16 (¶¶8, 12) (Miss. 2023). The *Howell* opinion was issued after briefing in this appeal. *Howell* overruled *Rowland* and any other precedent that applied the "judicially crafted fundamental-rights exception to constitutional, substantive enactments of the Legislature." *Id.* Therefore, Roberson's claim that his PCR motion should survive the statutory bars of the UPCCRA due to the involvement of fundamental constitutional rights implications is no longer applicable post-*Howell*.

6

¶15. The separate opinion argues that *Howell*'s holding should be limited to what was explicitly discussed in that case—the three-year statute of limitations of the UPCCRA. While the separate opinion acknowledges that the *Howell* opinion implies that its reasoning will apply to other aspects of the UPCCRA, the separate opinion would use a strict reading and rely on other precedents for the implementation of the successive-motions bar. However, that view of the holding in *Howell* is more restrictive than the language used. In *Howell*, the supreme court noted that the Legislature can only enact substantive law and may not enact procedural law. *Id.* at 615 (¶8). While the opinion directly dealt with the statute of limitations, it was written to suggest that it applied to all "constitutional, substantive enactments of the Legislature." *Id.* The separate opinion notes, and we would emphasize, that the *Howell* opinion uses plural words such as "bars" and "enactments" at several points. *See id.* at 615-16 (¶¶8, 12). *Howell* lists the three-year statute of limitations as an example of a substantive enactment of the Legislature, when it could have clearly limited the holding to that issue alone. *Id.* We believe it was the supreme court's intent to apply its holding to all aspects of the UPCCRA, including the successive-motions bar.

¶16. Roberson also claims that his PCR motion should survive the statutory bars of the UPCCRA by showing "exceptional circumstances" that justify an exception, citing *Chapman v. State*, 167 So. 3d 1170, 1174 (¶12) (Miss. 2015). Even if *Chapman* is applicable post-*Howell*, this case is distinguishable.[4] In *Chapman*, the defendant had not filed a direct

---

[4] The supreme court in *Chapman* based its decision on the fact that Chapman was effectively denied his right to appeal based on the lack of any sufficient trial record. *See Chapman*, 167 So. 3d at 1173-74 (¶¶8-12). The supreme court also relied, in part, on the fundamental-rights exceptions addressed in *Rowland*. *Chapman*, 167 So. 3d at 1174-75

7

appeal, and his several PCR motions were summarily dismissed by the circuit court without an evidentiary hearing on procedural grounds. *Id.* at 1171-72 (¶2). In finding that extraordinary circumstances existed—the lack of a direct appeal, the lack of a court record, the attorney's failure to obtain a transcript, and the lack of any appellate review on the merits of Chapman's claims—the supreme court held that Chapman was entitled to an evidentiary hearing to determine if the trial record could be located or reconstructed. *Id.* at 1174 (¶12). The supreme court held that if the record and transcript could be produced, then the circuit court should consider the merits of Chapman's claims. *Id.*

¶17. This Court reached a similar result in *Jefferson v. State*, 302 So. 3d 694, 700 (¶19) (Miss. Ct. App. 2020). In that case, the defendant's PCR motion was summarily dismissed due to the lack of any transcripts in the record. *Id.* at 697 (¶4). This Court remanded the case for an evidentiary hearing because "it [was] impossible to address the merits of [the defendant's] claims and his assertion of ineffective assistance of counsel." *Id.* at 700 (¶19) (quoting *Chapman*, 167 So. 3d at 1173 (¶8)).

¶18. Here, Roberson filed his first PCR motion within the statutory three-year period. Unlike in *Chapman*, where Chapman's PCR motions were summarily dismissed, the circuit court considered Roberson's claims on the merits and denied the motion. Roberson had the opportunity to bring his ineffective-assistance claim in this first motion, but he failed to do so. Roberson also chose not to appeal the denial of his first PCR motion.

¶19. Despite the difficulties that Roberson faced filing a PCR motion as an incarcerated

(¶13). There has been no appellate opinion that cites *Chapman*'s holding since *Howell* was issued. The application of *Chapman* is questionable.

8

individual with below-average intelligence, we do not find that these circumstances rise to the level of the exceptional circumstances as Roberson urges (applying *Chapman*) that would justify ignoring the UPCCRA's statutory bars. In *Chapman*, an evidentiary hearing was granted due to several record-related factors. *Id.* at 1174 (¶12). Here, Roberson was granted an evidentiary hearing, so it is not impossible to address the merits of his claim. *Jefferson*, 302 So. 3d at 700 (¶18). Therefore *Chapman* is inapplicable, and Roberson is not entitled to an exception from the statutory bars. Notwithstanding the application of the statutory bar, we elect to address the merits of Roberson's claims.[5]

## II.    Involuntary Plea

¶20.    Roberson claims his plea was involuntary because he was affirmatively misinformed about a plea deal.

¶21.    Of course, "[a] voluntary plea emanates from the defendant's informed consent." *Hays v. State*, 321 So. 3d 1208, 1212 (¶10) (Miss. Ct. App. 2021). While it is not a requirement that a defendant understands the nature of parole, its eligibility, or the circumstances under which it may be granted, "a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on the misinformation." *Id.* at 1212-13 (¶10). However, "[t]he petitioner bears the burden of proving by a preponderance of the evidence that his plea was involuntarily entered." *Id.* at 1213 (¶10).

---

[5] The *Howell* decision was issued after briefing concluded in this case. Also, the separate opinion argues that Roberson's motion is not statutorily barred. As both the majority and separate opinion agree in the result, we find it prudent to discuss the merits and explain our reasoning.

¶22. Roberson argues that he met the burden of proving that his plea was involuntary. Roberson testified at his PCR hearing that he only pled guilty because he thought he was going to be eligible for parole after ten years. Hubbard corroborated this testimony somewhat with her own testimony. Hubbard testified that she believed a plea deal was in place that would offer Roberson life with parole eligibility, and she testified that she encouraged Roberson to take that deal. She testified that Tisdell never corrected her understanding. Both testimonies were refuted by Tisdell, who testified that a plea deal was never in place, that he never communicated any plea deal to Roberson, and that Roberson was aware of this fact.

¶23. The circuit court found Roberson's and Hubbard's testimonies were unreliable and that Roberson failed to show his plea was involuntary. We find that the record supports the circuit court's conclusion. Roberson's claim fails because any misunderstanding of a plea deal was resolved upon his sworn testimony in the plea colloquy. "Even if [defendant's] attorney affirmatively misinformed him about his parole eligibility, the record reveals that the circuit court corrected any erroneous advice before accepting [defendant's] guilty pleas." *Id.* at (¶11). Roberson was properly informed of the lack of a plea deal and the risk that he could be sentenced to serve life in prison without eligibility for parole during his plea colloquy. When the trial judge asked if he understood and if he still wanted to plead guilty, Roberson answered, "Yes sir." Roberson claims that he only answered "yes" to each question because Tisdell told him to do that. However, we note that there were times when Roberson answered "no" in response to several questions.

| COURT: | Mr. Roberson, has anybody threatened you in any way to get you to come in here and plead guilty? |
|---|---|
| ROBERSON: | No, sir. |
| COURT: | All right. You've been represented by Mr. Tisdell, I assume, with a great deal of assistance by Ms. Hubbard, the mitigation specialist. If you have any complaints about your representation in this matter, now is the time to make them, sir. Any complaints? |
| ROBERSON: | No, sir. |

"Solemn declarations made in open court carry a strong presumption of verity." *Vaughn v. State*, 85 So. 3d 907, 912 (¶16) (Miss. Ct. App. 2012) (quoting *Jones v. State*, 885 So. 2d 83, 876 (¶8) (Miss. Ct. App. 2004)).

¶24. The circuit court also noted that the plea colloquy belied Hubbard's reliability as a witness. Hubbard claimed that she believed there was a plea deal in place, yet she did nothing during the plea hearing when the trial judge said otherwise in her presence. Roberson argues that it was an error for the court to use this fact against Hubbard because she should not be expected to interrupt the court. However, the judge allowed Hubbard to stand next to Roberson and Tisdell at the bench and explicitly informed Roberson that he could discuss with either Hubbard or Tisdell anything he did not understand during the plea proceeding. While Roberson's and Hubbard's testimonies were inconsistent with the record found in the plea colloquy, Tisdell's testimony stayed consistent. Tisdell testified that he tried to secure a plea deal but was unsuccessful, and no plea deal was made. Andre de Gruy's testimony corroborated Tisdell's testimony.

¶25. Even if Roberson had shown that his plea was involuntary, his claim would still fail.

11

Our caselaw is clear that an involuntary plea does not implicate "fundamental rights that can survive PCR [statutory] bars." *Davis v. State*, 328 So. 3d 693, 697 (¶15) (Miss. Ct. App. 2021), *cert. denied*, 329 So. 3d 1199 (Miss. 2021); *see also Owens v. State*, 281 So. 3d 863, 867 (¶11) (Miss. Ct. App. 2019).

¶26. The record supports the circuit court's finding; therefore, the circuit court's ruling was not clearly erroneous.

### III. Ineffective Assistance of Counsel

¶27. Roberson claims that Tisdell's assistance was ineffective by failing to correct Hubbard's misunderstanding regarding a plea deal, failing to investigate the facts of the case, and failing to provide Roberson's post-conviction counsel with the case files.[6]

¶28. "Under the *Strickland* test,[7] in order to succeed on an ineffective-assistance-of-counsel claim, the defendant must show that his trial counsel's performance was deficient, and he was prejudiced by that deficiency." *Magee v. State*, 270 So. 3d 225, 229 (¶16) (Miss. Ct. App. 2018). Roberson must show that his counsel's errors proximately resulted in his guilty plea and that he would not have pled guilty but for his counsel's errors. *Id.* Roberson must show "unprofessional errors of substantial gravity, and allege such facts with specificity and detail." *Id.* However, there is a "strong rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 230 (¶16).

¶29. Roberson's first argument focuses on Hubbard's advice to "take the deal." Had

---

[6] Roberson retained different counsel to file his second PCR motion.

[7] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Tisdell misinformed Roberson himself, this claim would be stronger. *See Garner v. State*, 928 So. 2d 911, 915 (¶14) (Miss. Ct. App. 2006). However, this purported advice came from Hubbard, the non-lawyer mitigation specialist. Hubbard's alleged belief that there was a plea deal is corroborated by De Gruy's testimony. But De Gruy understood that there was no plea deal. Additionally, Tisdell testified that Roberson was aware that there was no plea and that he was pleading guilty with a chance that he could be imprisoned for life without parole. The transcript of the plea hearing supports Tisdell's testimony and directly contradicts Roberson's claim that Tisdell told him that if he pled guilty, he would be eligible for parole after only ten years. During the plea hearing, Roberson was advised and responded as follows:

> **Q. [(By the Court)]** Mr. Roberson, you need to understand – and I'm sure that your attorneys and Ms. Hubbard have probably advised you – that in the vast majority of cases where someone enters a plea of guilty before this Court or any other Court, that the State often makes a recommendation as to the sentence that might be imposed upon that particular individual. Now, the Court is not bound by that recommendation, meaning I wouldn't have to follow the recommendation if I chose not to. But nonetheless, in the vast majority of cases, such a recommendation is made.
>
> Now, in this case, they made no such recommendation. We call that an open plea. That means that they pretty much stand moot [sic] with regard to a recommendation in this case.
>
> *Now, you need to understand that under Count I, there are two possible penalties. I guess the maximum penalty would be life without parole or without the possibility of parole, and there's also the possibility – a penalty of life with the possibility of parole. I think those are the only two sentences available under Count I.*
>
> Under Count II, which is motor vehicle theft, the penalty – maximum penalty is up to ten (10) years and a fine of up to ten thousand dollars ($10,000.00), or both.
>
> Now, you understand that based upon your plea here today, I could

sentence you to life without the possibility of parole in Count I; I could sentence you to ten (10) years in prison, not suspend a day of the time, and a ten thousand dollar ($10,000.00) fine; I could make them run consecutive, meaning that I could sentence you – I have the authority to sentence you on your pleas here today, under Count I to life, and followed by ten (10) years under Count II?

Do you understand all of that, sir?

**A.** Yes, sir.

**Q.** Knowing those things, do you still want to plead guilty, sir?

**A.** Yes, sir.

(Emphasis added).

¶30. Next, Roberson argues that Tisdell's lack of investigation shows ineffective assistance. Many of the issues Roberson discusses are not applicable to his claim involving the guilty plea. "A voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Bell v. State*, 310 So. 3d 837, 840 (¶7) (Miss. Ct. App. 2021). Tisdell testified that Roberson admitted to the crime and wanted to plead guilty. In addition, Tisdell discussed the discovery with Roberson. Contrary to Roberson's argument on appeal, the State had substantial evidence suggesting Roberson committed the crime. Given the circumstances, Roberson cannot show that but for the lack of an investigation, he would not have pled guilty.

¶31. Ultimately, Roberson's ineffective-assistance claim primarily depended on the credibility of the witnesses. "The [circuit] court sits as finder of fact in a [PCR] proceeding" in which "the evidence on a critical point is in conflict." *Henderson v. State*, 769 So. 2d 210,

14

213 (¶8) (Miss. Ct. App. 2000). This Court will not reverse a trial court's finding of fact, including a "finding of ultimate fact," "unless it is clearly erroneous." *Merritt v. State*, 517 So. 2d 517, 520 (Miss. 1987). Moreover, "[w]hen conflicting evidence capable of more than one reasonable interpretation is presented to the court, the trial judge, as with any finder of fact, is entitled to determine the credibility of the witnesses and the weight to afford their testimony." *Dickerson v. State*, 291 So. 3d 344, 353 (¶36) (Miss. 2020); *accord Shelby v. State*, 311 So. 3d 613, 625 (¶50) (Miss. Ct. App. 2020), *cert. denied*, 310 So. 3d 830 (Miss. 2021). The circuit court found that Tisdell was more credible than Hubbard and Roberson.

¶32. Finally, Roberson argues that Tisdell did not turn over his case file to his post-conviction counsel and violated the Mississippi Rules of Professional Conduct. The insinuation was that Tisdell was actively withholding the case file because it contained information that would show his alleged ineffectiveness. However, Tisdell testified that he attempted to produce the case file but could not find the file at his office. While the record does not show that Tisdell was acting in bad faith, such is not even applicable to Roberson's argument. The absence of Tisdell's case file does not override the evidence in the record of Roberson's guilty plea years earlier.

## CONCLUSION

¶33. Roberson's PCR motion is statutorily barred under the UPCCRA as a successive motion. Notwithstanding the statutory bar, Roberson's claims lack merit. The circuit court's ruling, not being clearly erroneous, is affirmed.

¶34. **AFFIRMED.**

15

**BARNES, C.J., CARLTON, P.J., LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.; WESTBROOKS, J., JOINS IN PART.**

**WILSON, P.J., CONCURRING IN PART AND IN RESULT:**

¶35. I concur that the circuit court's order partially denying Roberson's PCR motion should be affirmed but for reasons somewhat different from the majority. I write briefly to explain the differences.

¶36. Roberson's PCR motion is barred by the plain language of Mississippi Code Annotated section 99-39-23(6) (Rev. 2020), which provides that "any order dismissing [a PCR] motion or otherwise denying relief under [the Uniform Post-Conviction Collateral Relief Act (UPCCRA)] is a final judgment and shall be conclusive until reversed" and "shall be a bar to a second or successive motion under [the UPCCRA]." The circuit court previously denied Roberson's first PCR motion. Roberson did not appeal, so his present motion is barred by the text of the statute. The statute includes some exceptions to this successive-motions bar, *see id.*, but none apply in this case.

¶37. In addition, the Mississippi Supreme Court previously held that "errors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA," including the successive-motions bar. *Rowland v. State*, 42 So. 3d 503, 506 (¶9) (Miss. 2010) (*Rowland I*), *overruled by Howell v. State*, 358 So. 3d 613, 615-16 (¶¶8, 12) (Miss. 2023). The Court never provided a definitive list of the "fundamental constitutional rights" that fit within this exception. In one case, the Court held that the protection against double

16

jeopardy, the right to be free of an "illegal sentence," and the right to "due process at sentencing" are "fundamental constitutional rights." *Rowland v. State*, 98 So. 3d 1032, 1036 (¶6) (Miss. 2012) (*Rowland II*), *overruled by Howell*, 358 So. 3d at 615-16 (¶¶8, 12). The Court stated that "[t]he deprivation of liberty—that unalienable, natural right inherent in all persons since time immemorial—without authority of law" is what "distinguishes these three [rights] from all other [rights]." *Id.* (footnote omitted) (citing *The Declaration of Independence* para. 2 (1776)).[8] Later, the Court also said that a claim of ineffective assistance of counsel "*might* be excepted from the procedural bars" in some cases "in exceptional circumstances." *Conley v. State*, No. 2011-M-01006, 2020 WL 949240, at *1 (Miss. Feb. 26, 2020) (order) (emphasis added); *see also Chapman v. State*, 167 So. 3d 1170, 1174 (¶12) (Miss. 2015) (stating that an ineffective assistance claim was excepted from the procedural bars due to that case's "extraordinary circumstances").

¶38.    As the majority notes, the Supreme Court recently "overrule[d] *Rowland I*, *Rowland II*, and any other case in which, and to the extent that, [the Court had] held that the fundamental-rights exception can apply to the substantive, constitutional bars codified by the Legislature in the [UPCCRA]." *Howell*, 358 So. 3d at 616 (¶12). Elsewhere in *Howell*, the Court explained that "the judicially crafted fundamental-rights exception" cannot apply "to

_____

[8] Well, not quite "all." The Court later held that ex post facto claims and claims alleging a denial of the "fundamental right not to be convicted while incompetent" are also excepted from the "procedural bars." *Bell v. State*, 123 So. 3d 924, 924-25 (Miss. 2013) (en banc order) (ex post facto claims); *Boyd v. State*, 155 So. 3d 914, 918 (¶13) (Miss. Ct. App. 2014) (ex post facto claims); *Smith v. State*, 149 So. 3d 1027, 1031 (¶8) (Miss. 2014) (right not to be convicted while incompetent), *overruled on other grounds by Pitchford v. State*, 240 So. 3d 1061 (Miss. 2017).

17

constitutional, substantive enactments of the Legislature *such as the three-year statute of limitations applicable to petitions for post-conviction relief.*" *Id.* at 615 (¶8) (emphasis added). Thus, *Howell* clearly does away with a "fundamental-rights exception" to the UPCCRA's statute of limitations.

¶39. What is less clear is whether *Howell* also eliminates the "fundamental-rights exception" to the successive-motions bar. *Howell* does not mention, let alone analyze, the successive-motions bar, which was not at issue in that case. *Howell* does refer to the UPCCRA's "substantive, constitutional *bars*" and the "substantive *enactments* of the Legislature *such as the . . . statute of limitations.*" *Id.* at 615-16 (¶¶8, 12) (emphasis added). These statements imply that *Howell*'s reasoning will apply to other statutes as well. But the Court has not yet squarely held that the successive-motions bar *is* a "substantive" law rather than a "procedural" one. And in *Smith*, the Court held the opposite, stating, "This Court consistently has declared that the successive-pleadings bar is a procedural bar." *Smith*, 149 So. 3d at 1031 (¶9) (citing *Rowland II*, 98 So. 3d at 1035).

¶40. Because the Mississippi Supreme Court has not yet abolished the "fundamental-rights exception" to the successive-motions bar, we are bound to continue to follow prior precedents recognizing such an exception. "This Court, sitting as an intermediate appellate court, is bound by established precedent as set out by the Mississippi Supreme Court and we do not have the authority to overrule the decisions of that [C]ourt." *Bevis v. Linkous Constr. Co.*, 856 So. 2d 535, 541 (¶18) (Miss. Ct. App. 2003). As the United States Supreme Court has instructed the federal courts of appeals, "[i]f a precedent of [the Supreme] Court has

direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp. Inc.*, 490 U.S. 477, 484 (1989). An intermediate appellate court may not, "on its own authority, . . . take[] the step of renouncing" the precedent of a higher court. *Id.* Accordingly, I would not apply *Howell* in this case and would continue to assume that there is a "fundamental-rights exception" to the successive-motions bar.

¶41. Nonetheless, I agree with the majority that the circuit court's order should be affirmed. First, as the majority notes, even prior to *Howell*, this Court repeatedly had held that involuntary-plea claims did not implicate the fundamental-rights exception to the successive-motions bar. *See ante* at ¶25. Therefore, this claim is clearly subject to the successive-motions bar and need not be addressed on the merits.

¶42. Second, under pre-*Howell* precedents, ineffective-assistance claims "might be excepted from the procedural bars" but only in "exceptional circumstances" or "extraordinary circumstances." *Smith v. State*, 334 So. 3d 1199, 1203 (¶9) (Miss. Ct. App. 2021) (emphasis omitted) (quoting *Conley*, 2020 WL 949240, at *1; *Chapman*, 167 So. 3d at 1174 (¶12)), *cert. denied*, 334 So. 3d 1161 (Miss. 2022). Therefore, in order to succeed on his ineffective-assistance claim, Roberson would have to demonstrate not only ineffective assistance of counsel and resulting prejudice but also some additional exceptional or extraordinary circumstances.

¶43. The evidence regarding Roberson's ineffective-assistance claim consisted of not only

19

Roberson's plea petition and plea colloquy but also the testimony of Tisdell, Hubbard, and Roberson. Tisdell testified at the PCR hearing that he represented Roberson to the best of his ability and thoroughly advised him regarding the State's plea offer. Moreover, the transcript of Roberson's plea hearing contradicts Roberson's present allegations. *See ante* at ¶29. For the reasons discussed by the majority, I agree that the circuit judge did not clearly err by finding that Tisdell—whose testimony was consistent with Roberson's own sworn statements at his plea hearing—was more credible regarding the material issues in the case than Roberson and Hubbard. Accordingly, regardless of the applicability of the successive-motions bar or pre-*Howell* precedents, I concur that the order of the circuit court partially denying Roberson's PCR motion should be affirmed.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION. WESTBROOKS, J., JOINS THIS OPINION IN PART.**

20